UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GIRALDES, JR.,<br><br>Plaintiff,<br><br>v.<br><br>ALICE NICOLAI, et al.,<br><br>Defendants. | No. 2:16-cv-0497 KJM AC P<br><br>FINDINGS AND RECOMMENDATIONS |

Larry Giraldes, Jr. ("plaintiff") is a state prisoner proceeding pro se with this action pursuant to 42 U.S.C. § 1983. On July 21, 2017, he filed a motion for emergency preliminary injunction, ECF No. 41, alleging that defendants had substantially reduced his pain medication after they discovered that he had signed "settlement conference papers"[1] in this case. Id. at 1. He seeks to have the court enter an injunction which requires the defendants to abide by an "expert/specialist plan" dictating that he be provided sixty milligrams of morphine every four hours. Id. at 3.

On July 26, 2017, the court directed defendants' counsel to file a response to plaintiff's motion within a week. ECF No. 43. On August 2, 2017, defendants filed medical records which

---

[1] A settlement conference in this case has been set for November 29, 2017 before Magistrate Judge Kendall J. Newman. ECF Nos. 37-38. Days after that conference was scheduled, plaintiff filed a motion to vacate the settlement hearing. ECF No. 40. The court has not yet ruled on that motion.

1

indicated that plaintiff had been receiving morphine doses and that there was no emergent threat to his health. ECF No. 46. They sought an extension of time to respond to plaintiff's motion (id.), and the court granted it (ECF No. 47). On August 22, 2017, defendants filed an opposition to plaintiff's motion. ECF No. 54. Plaintiff filed a reply on September 1, 2017 (ECF No. 58) and the motion is now ready to be decided. For the reasons stated hereafter, the court recommends that the motion be denied.

I. Legal Standards

"A preliminary injunction is an 'extraordinary and drastic remedy' . . . it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, p. 129 (2d ed.1995) and Yakus v. United States, 321 U.S. 414, 440 (1944)). "The sole purpose of a preliminary injunction is to "preserve the status quo ante litem pending a determination of the action on the merits." Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009) (citing L.A. Memorial Coliseum Comm'n v. NFL, 634 F.2d 1197, 1200 (9th Cir.1980)).

In evaluating the merits of a motion for preliminary injunctive relief, the court considers whether the movant has shown that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter). The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). A preliminary injunction is appropriate when a plaintiff demonstrates . . . "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff, . . . assuming the other two elements of the *Winter* test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011). An injunction against individuals who are not parties to the action is strongly disfavored. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969).

Additionally, in cases brought by prisoners involving conditions of their confinement, any

preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

II.   Analysis

A.   Settlement Agreement

Before proceeding to the merits of plaintiff's motion, the court will pause to take note of the settlement agreement that this dispute over pain medication appears to stem from. In August of 2010, plaintiff settled Giraldes v. Hicimbothom, et al., 1:09-154 –SKO. Id., ECF Nos. 35-36. Defendants request that the court take judicial notice of this settlement agreement and other Hicimbothom related documents that have been incorporated into their opposition. ECF No.54-1 at 1-2.[2] The court elects to do so, and notes that plaintiff does not appear to dispute the authenticity of any of these documents. See United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (holding that a court may take judicial notice of its own records). Regardless, in deciding a motion for preliminary injunction, the court is not limited to the pleadings and may consider affidavits and other evidence submitted by the parties. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); see also Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits . . . [t]he trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.")

Documents attached to pleadings in this case reveal that this settlement agreement required the California Department of Corrections and Rehabilitation to: (1) transfer plaintiff from Salinas Valley State Prison to California State Prison- Sacramento; (2) provide him with an elevated hospital bed; (3) provide him with frequent small meals; (4) provide him with "protein drink" as needed; and (5) provide him with pain management as needed. ECF No. 54-1 at 7. The

---

[2] A copy of the terms of the settlement agreement is also available on the Hicimbothom docket at ECF No. 44-1 at 3-5.

settlement agreement provided that Magistrate Judge Nandor J. Vadas, who presided over the settlement conference, would retain jurisdiction of the case for one year after settlement – from August 12, 2010 until August 12, 2011. Id. at 4, 7.

This court does not have jurisdiction to enforce that settlement agreement. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379 (1994) (finding that no Supreme Court precedent has "relied upon a relationship so tenuous as the breach of an agreement that produced the dismissal of an earlier federal suit" to support "otherwise nonexistent federal jurisdiction."); see also Ortolf v. Silver Bar Mines, 111 F.3d 85, 87 (9th Cir. 1997) ("We have held that an order based on a settlement agreement is insufficient to create ancillary jurisdiction.") (internal quotation marks omitted). Thus, the only question before this court is whether, irrespective of the prior settlement, plaintiff has demonstrated that he will be irreparably harmed by defendants' decision not to provide him with sixty milligrams of morphine every four hours.

          B.      Irreparable Harm

Courts have held that, although establishing irreparable harm is only one of the factors identified in Winter, a movant's failure to do so is fatal to any request for preliminary injunctive relief. See Herb Reed Enters., LLC v. Fla. Entm't Mgmt., 736 F.3d 1239, 1251 (9th Cir. 2013) ("Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm."). Plaintiff has made numerous allegations regarding the necessity of his desired morphine dosages (ECF No. 41 at 1-2; ECF No. 58 at 1-2), but he has not produced sufficient evidence to establish that he will be irreparably harmed if he is not provided with the specific amount or type of pain medication he seeks. He argues that two physicians – Dr. Langlois and Dr. Henry – have opined that this morphine treatment was necessary. ECF No. 41 at 2. The records attached to his motion are not persuasive on this point, however. First, these records date from 2008 (id. at 33-37) and their value in guiding treatment today – nearly a decade later – is suspect. Second, none of these records specifically state that four sixty milligram doses of morphine per day are essential to plaintiff's well-being. One of the consult records does indicate a concurrence with Dr. Langlois' recommendation that plaintiff be switched from morphine to a drug called Dilaudid in a dosage that would be equivalent to sixty milligrams of

4

morphine every four hours. ECF No. 41 at 37. The consult notes, however, that this adjustment would be a trial; it does not explicitly state that plaintiff would be medically harmed by a dosage that did not equal his desired morphine dose, nor does it state that such a dosage would be required indefinitely. Id.

Defendants have filed more current records which indicate that, as of late July 2017, plaintiff has been provided with doses of morphine, albeit not in the amount he seeks. E.g., ECF No. 46 at 7-8. Additionally, 2016 affidavits originally provided by defendants Bi and Bobbala in Hicimbothom (and reproduced with defendants' opposition in this case) evidence their medical judgment that high doses of morphine are not medically necessary for plaintiff. ECF No. 54-1 at 32, 58-59. Defendant Bobbala states that, in March 2016, medical staff began tapering plaintiff's morphine dosage and he suffered no significant adverse effects as a result of that adjustment. Id. at 58-59.

In his reply, plaintiff argues that defendants' opposition misstates facts in an attempt to mislead the court. ECF No. 58 at 3. He points to purported contradictions in defendant Bobbala's declaration (id. at 3-5), but the court finds the argument unpersuasive. Plaintiff contends, for instance, that Bobbala misrepresents the decision to taper his morphine as a committee finding when, in fact, she "was the creator of the issue herself." Id. at 4. Bobbala's affidavit explicitly notes, however, that "over the years I believed the morphine dose [plaintiff] was receiving was too high and should be reduced." ECF No. 54-1 at 57. She states that she took this matter to the Institutional Utilization Management Committee and they unanimously agreed to taper plaintiff's dosage. Id. at 58. The court finds no relevant contradiction here. Plaintiff also argues that Bobbala's statement that she was not aware of his settlement is indicative of perjury. ECF No. 58 at 3-4. Bobbala merely states, however, that she labored for a time under the mistaken assumption that plaintiff's specific morphine dosage was fixed by a court order. ECF No. 54-1 at 57. Subsequently, she learned that the settlement allowed for an adjustment to pain medication "as needed." Id. This is not evidence of perjury or retaliatory intent.

Next, plaintiff argues that defendant Bi's affidavit is irrelevant insofar as it concerns his esophageal issues rather than his multiple, surgical "adhesions." ECF No. 58 at 6. However, the

5

affidavit is clearly pertinent in several respects. First, it states Bi's opinion that plaintiff has no diagnosed reason for being unable to eat due to pain. ECF No. 54-1 at 31-32. Second, it offers Bi's opinion that plaintiff is histrionic and amplifies his symptoms in an attempt to resume his morphine dosage. Id. at 32. Finally, he offers his professional estimation that there is no medical requirement that pain be treated with opioids and that there are other non-opiate pain relievers available. Id. at 32.

Regardless of the purported shortcomings in defendants' affidavits, the fact remains that the burden of establishing irreparable harm rests with plaintiff. Winter, 555 U.S. at 22. He has failed to carry that burden and his motion should be denied on that basis alone.

### C. Other Factors

The court also concludes that the other Winter factors weigh against granting plaintiff's motion. Plaintiff has not demonstrated that he is likely to succeed on the merits of this suit. Additionally, the court concludes that neither the balance of equities nor the public interest would be served by granting his motion. Courts must take particular care to intrude only as far as necessary into prison administration to protect inmates' constitutional rights. See Bruce v. Ylst, 351 F.3d 1283, 1290 (9th Cir. 2003).[3] Here, plaintiff asks this court to order a particular medical treatment – indeed, a particular type and dosage of medication – which his medical providers have deemed inappropriate.[4] To call such an intrusion into prison administration significant would be an understatement. This is not to say that an inmate could never succeed in showing that some particular course of treatment was medically necessary. It would require more evidence than plaintiff has brought to bear in support of this motion, however.

In closing, the court notes that, if plaintiff feels that his medical care is not constitutionally adequate, he remains free to file a separate suit on that issue. This case proceeds based solely on his First Amendment retaliation claims. ECF No. 19 at 1-2.

---

[3] Additionally, as defendants correctly note, mandatory injunctions –injunctions which compel a party to act as opposed to refrain acting – are disfavored. See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009) (quoting Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1980)).

[4] To be sure, plaintiff disputes the motivations of defendants for altering his medication. He has failed to establish that they were retaliatory or otherwise improper, however.

### III. Conclusion

Based on the foregoing, the court recommends that plaintiff's motion for emergency preliminary injunction (ECF No. 41) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

SO ORDERED.

DATED: September 6, 2017

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE